## UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## FLORENCE DIVISION

| | | |
|---|---|---|
| **LEIGHA LEMOINE** | § | |
| | § | |
| | § | C.A. No.:   4:24-cv-6032-JD |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | |
| | § | |
| | § | **VERIFIED COMPLAINT FOR** |
| **HORRY GEORGETOWN** | § | **DECLARATORY AND INJUNCTIVE** |
| **TECHNICAL COLLEGE; MARILYN** | § | **RELIEF AND DAMAGES** |
| **MURPHY FORE, Ed.D, individually** | § | |
| **and in her official capacity as President** | § | |
| **of Horry Georgetown Technical** | § | |
| **College; MELISSA BATTEN, Ph.D.,** | § | |
| **individually and in her official capacity** | § | |
| **as Vice President of Student Affairs of** | § | |
| **Horry Georgetown Technical College;** | § | |
| **and KRISTIN SAWYER, Ed.D.,** | § | |
| **individually and in her official capacity** | § | |
| **as Director of Student Development;** | § | |
| **Jane Doe, individually and in her** | § | |
| **official capacity; and John Doe,** | § | |
| **individually and in his official capacity** | § | |
| | § | |
| *Defendants.* | | |
| _____ | § | |

Plaintiff Leigha Lemoine ("Plaintiff" or "Lemoine"), by and through her undersigned counsel, files this Complaint against Defendants Horry Georgetown Technical College ("HGTC"), Marilyn Murphy Fore ("Fore"), Melissa Batten ("Batten"), and Kristin Sawyer ("Sawyer"). This is a federal civil rights action brought pursuant to 42 U.S.C. § 1983. Defendant HGTC and Defendants Fore, Batten, Sawyer, Jane Doe, and John Doe suspended Lemoine for one year with no guarantee of re-enrollment and issued a no trespass notice to Lemoine, a private citizen and student enrolled in the Cosmetology Program at HGTC, in violation of her rights under the First

and Fourteenth Amendments of the United States Constitution, as well as her rights protected by the South Carolina Constitution.

## NATURE OF ACTION

1.      On September 20, 2024, Defendants suspended Lemoine from the HGTC Cosmetology Program for one year with no guarantee of re-enrollment and issued her a no trespass notice based on their claim that Lemoine's social media posts violated the unconstitutionally vague and overbroad HGTC Student Code and the Student Code for The South Carolina Technical College System.  The supposed basis for Defendants' claim is as follows:

> a.      On or around September 5, 2024, Lemoine sent a text message in a group Snapchat that included other HGTC students that used the hyperbolic term "blasted" that allegedly made one or more HGTC students in the HGTC Cosmetology Program "feel uncomfortable" and "somewhat unsafe."

> b.      Subsequently, on or around September 11, 2024, either one of Lemoine's classmates or professors rummaged through Lemoine's Instagram account and discovered an unrelated, year old Instagram video post of Lemoine wearing a western style outfit doing target practice with a friend's small handgun at that friend's private property with the words "Got u hooked."

2.      Defendants informed Lemoine that these two social media posts, viewed in conjunction, was a violation of the Student Code which states in pertinent part:

> E.  Infringement of Rights of Others

> Infringement of rights of others is defined to include, but is not limited to the following:

>> 5.  Engaging in any activity that disrupts the educational process of the college, interferes with the rights of others, or adversely interferes with other normal functions and services.

3.      Lemoine's Snapchat message and her Instagram post were constitutionally protected speech.  Lemoine explained to Defendants that her Snapchat message using the term "blasted" was in reference to a male, who was not a student at HGTC or affiliated with HGTC, and who had

recently shouted at her and used an offensive, misogynistic term against her during an incident at a residence off campus. Lemoine's message focused on this person needing to be held accountable and called out for his negative behavior towards her. Just as many would do, Lemoine communicated her frustration with her situation in a Snapchat message group that was unaffiliated with HGTC but included some HGTC classmates. Defendants initially accepted this explanation and informed Lemoine that there was no evidence that she violated the Student Code. Subsequently, either one of Lemoine's classmates or professor's rummaged through her Instagram posts going back a year prior to her enrollment at HGTC and discovered the completely unrelated Instagram video.

4.      Contrary to well established legal precedent that a yearlong suspension of Lemoine from the HGTC Cosmetology Program in response to her exercising her constitutionally protected speech would violate her basic freedom of speech and due process rights, Defendants expelled Lemoine from HGTC.

5.      This is a federal civil rights action brought pursuant to 42 U.S.C. § 1983. The decision to suspend Lemoine from the Cosmetology Program at HGTC and the methods employed to accomplish that objective violated her rights protected by the First and Fourteenth Amendments of the United States Constitution, as well as rights protected by the South Carolina Constitution. Lemoine seeks permanent injunctive relief as well as nominal, compensatory, and punitive damages to be determined by a jury, plus attorneys' fees and costs pursuant to 42 U.S.C. § 1983 and 42 U.S.C. §1988.

## VENUE

6.      Venue in this judicial district is proper pursuant to 28 U.S.C. §1391(b) because: (i) Defendants reside in this judicial district, and (ii) all of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this judicial district.

## JURISDICTION

7.      This action arises under the First Amendment and Fourteenth Amendment to the United States Constitution and is brought pursuant to 42 U.S.C §1983.  Jurisdiction for this suit is conferred in part by 42 U.S.C. § 1983, which provides, in part:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory, or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction of thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

8.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§1331 and 1343(a)(3)(4).  Further, this Court has jurisdiction under 28 U.S.C. § 1367 to hear an action to redress a deprivation of rights guaranteed by the laws and the Constitution of the State of South Carolina.

9.      This Court is authorized to grant Plaintiff's prayer for permanent injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure.

10.      This Court is authorized to grant Plaintiff's prayer for nominal, compensatory, and punitive damages pursuant to 42 U.S.C. §1983 and costs, including a reasonable attorney's fee, pursuant to 42 U.S.C. §1988.

## PARTIES

11.      The Plaintiff is a private citizen and resident of Horry County, State of South Carolina and prior to her suspension was a cosmetology student at HGTC receiving state funded financial aid

assistance through HGTC in the County of Horry, South Carolina, at all times pertinent to this Complaint. At no time was Plaintiff an employee of HGTC.

12.     Defendant Horry Georgetown Technical College ("HGTC") is a two year public technical college and exists to educate students in various trades, including cosmetology. HGTC is headquartered and operates in Horry County, South Carolina, and is a political subdivision of the State of South Carolina with the capacity to sue or be sued. HGTC operates within the State Technical College System of South Carolina under the State Board for Technical and Comprehensive Education. HGTC maintains offices and conducts business in Horry County, South Carolina.

13.     Upon information and belief, Defendant Marilyn Murphy Fore ("Fore") resides in or around Georgetown County, South Carolina. At all times relevant to this Complaint, Defendant Fore was the President of HGTC and was a decision maker in the decision to suspend Plaintiff from HGTC in response to Plaintiff exercising her right to First Amendment protected speech and without due process. Defendant Fore is being sued in her official as well as her individual capacity for actions taken under color of state law while acting in the scope of her official duties and for actions taken against Plaintiff with actual malice in that she acted with ill will towards Plaintiff and/or recklessly and wantonly with conscious indifference towards Plaintiff's rights.

14.     Upon information and belief, Defendant Melissa Batten ("Batten") resides in or around Horry County, South Carolina. At all times relevant to this Complaint, Defendant Batten was the Vice President of Student Affairs at HGTC and was a decision maker in the decision to suspend Plaintiff from HGTC in response to Plaintiff exercising her right to First Amendment protected speech and without due process. Defendant Batten is being sued in her official as well as her individual capacity for actions taken under color of state law while acting in the scope of her

official duties and for actions taken against Plaintiff with actual malice in that she acted with ill will towards Plaintiff and/or recklessly and wantonly with conscious indifference towards Plaintiff's rights.

15.    Upon information and belief, Defendant Kristin Sawyer ("Sawyer") resides in or around Horry County, South Carolina.  At all times relevant to this Complaint, Defendant Sawyer was the Director of Student Development at HGTC and was a decision maker in the decision to suspend Plaintiff from HGTC in response to Plaintiff exercising her right to First Amendment protected speech and without due process.  Defendant Sawyer is being sued in her official as well as her individual capacity for actions taken under color of state law while acting in the scope of her official duties and for actions taken against Plaintiff with actual malice in that she acted with ill will towards Plaintiff and/or recklessly and wantonly with conscious indifference towards Plaintiff's rights.

16.    Defendants Jane Doe and John Doe are as yet unidentified administrators, instructors, and/or other personnel at HGTC who were decision makers in the decision to suspend Plaintiff from HGTC in response to Plaintiff exercising her right to First Amendment protected speech and without due process.  Upon information and belief, Defendants Jane Doe and John Doe reside in or around Horry County, South Carolina.  Defendants Jane Doe and John Doe are being sued in their official as well as their individual capacity for actions taken under color of state law while acting in the scope of their official duties and for actions taken against Plaintiff with actual malice in that they acted with ill will towards Plaintiff and/or recklessly and wantonly with conscious indifference towards Plaintiff's rights.

17.    Defendants Fore, Batten, Sawyer, Jane Doe, and John Doe are not entitled to qualified immunity because the right of a student to be free from being punished for exercising her First

Amendment right to free speech and her right to due process were clearly established at the time Defendants Fore, Batten, and Sawyer expelled Plaintiff from HGTC for exercising her right to First Amendment protected speech and denied her right to due process.

## **FACTUAL ALLEGATIONS**

18.     Plaintiff incorporates the preceding paragraphs by reference as if fully rewritten herein.

19.     Prior to her yearlong suspension on September 20, 2024, Plaintiff was enrolled as a student in HGTC's Cosmetology Program with state funded financial aid assistance through HGTC and had been successful in her course work up through that time.   Plaintiff expected to graduate and earn her degree in the Summer of 2025, fulfilling her dream of becoming a successful and accomplished South Carolina licensed hair stylist and cosmetologist.

20.     On September 20, 2024, Defendants suspended Plaintiff from the HGTC Cosmetology Program for one year with no guarantee of re-enrollment and issued her a no trespass notice based on their claim that two of Plaintiff's social media posts violated the HGTC Student Code and the Student Code for The South Carolina Technical College System.  (**Ex. 1**, 2024 09 20 Notice of Suspension).

21.     Plaintiff was a participant in a Snapchat group text chain that included other HGTC students in Plaintiff's cosmetology cohort.

22.     This Snapchat group was not affiliated with HGTC, did not include any HGTC instructors or professors, did not include all students in this class, and was not a requirement for any HGTC students to participate in.

23.     Moreover, while students discussed class assignments in this Snapchat group, students often and routinely discussed private, personal matters not related to HGTC classes or HGTC in general.

24.    On or around the early evening of September 5, 2024, Plaintiff was visiting the residence of her boyfriend who was not a student at HGTC or affiliated with HGTC.  While she was there, her boyfriend's male roommate, who was also not a student at HGTC or affiliated with HGTC, came home and shouted at Plaintiff and used a derogatory and misogynistic term against her when he called her a "bitch" at this off-campus residence with no affiliation to HGTC.

25.    On or around that same evening, September 5, 2024, while on the Snapchat group text chain, Plaintiff vented her frustrations over this incident involving her boyfriend's roommate and stated "he needa get blasted." [sic]. (**Ex. 2**, 2024 09 05 Snapchat text message).

26.    Of the three Snapchat group participants that responded, all showed clear support for Plaintiff and her frustration with the incident, no indication that they perceived Plaintiff's comment as a threat of violence involving guns or otherwise, and even included several laughing emojis in their responses. *Id.*

27.    Defendants claim that on September 11, 2024, almost a week after Plaintiff's Snapchat text message containing the word "blasted," one or more HGTC students reported to Student Affairs that they felt "uncomfortable" and "somewhat unsafe" due to Plaintiff's single use of the term "blasted" in the group Snapchat text message despite the fact that the students reportedly "were unsure of [her] intent when [she] used the term 'blasted.'" **Ex. 1**. at p. 1.

28.    On that same day, September 11, 2024, Plaintiff met with Defendant Batten, HGTC Vice President for Student Affairs, and Defendant Sawyer, HGTC Director of Student Affairs, to discuss this Snapchat message and her use of the term "blasted."  (**Ex. 3**, 2024 09 17 Notice of Interim Suspension).

29.    At this meeting, Plaintiff offered an explanation for her choice of the word, "blasted" and "denied it having anything to do with physical harm." **Ex. 1** at p. 1.  Plaintiff further explained

that "by writing 'blasted,' [she] meant that the person needed to be held accountable and called out for his behavior."[1] *Id.*

30. Plaintiff resides with her parents and further explained at this meeting that neither she nor her parents own guns. *Id.*

31. At the conclusion of this meeting, Plaintiff asked if she was in trouble and was told that, "at this time, there was no evidence to find you in violation of the Student Code" and that "[t]he College had accepted [her] explanation for the Snapchat comment." *Id.*

32. Following this September 11 meeting, on September 13, 2024, either an HGTC student or an HGTC professor had apparently rummaged through Plaintiff's Instagram account and found a completely unrelated, year old video post from November 23, 2023, prior to Plaintiff's enrollment at HGTC, which depicted Plaintiff dressed in western style attire doing target practice with her friend's small handgun at her friend's private property in North Carolina with the words "Got u hooked." (**Ex. 4,** Screen Shot of Instagram Post).

33. On or around September 17, 2024, Plaintiff was required to meet again with Defendants Batten and Sawyer to discuss her Instagram post and was provided a letter notifying her that HGTC had been made aware of the Instagram post and that Defendant Fore had authorized an interim suspension.  . **Ex. 1**, at p. 2; **Ex. 3**.

34. When asked about the Instagram video during this meeting, Plaintiff stated that "it was [her] firing the gun and that the situation happened last year around Thanksgiving." *Id.*

---

[1] *Blast*, OXFORD ENGLISH DICTIONARY (Second Edition), https://www.oed.com/dictionary/blast_v ("To bring infamy upon (character, reputation); to discredit effectually, ruin, destroy.").  Plaintiff's use of the term can be understood as a variation on the phrase "to put on blast," which in internet parlance means to call out or publicly shame someone "with the intention of holding them accountable, seeking justice, or simply expressing disapproval."; LATER SOCIAL MEDIA MANAGEMENT, https://later.com/social-media-glossary/put-on-blast/#:~:text=To%20%22put%20someone%20on%20blast%22%20is%20a%20form%20of%20calling,justice%2C%20or%20simply%20expressing%20disapproval.

35.     At this meeting, Plaintiff also explained that "this was the only time [she] had ever fired a gun and that this gun did not belong to [her]" and that "the gun belonged to a friend and that this occurred in North Carolina." *Id.* At this meeting, Plaintiff also "voluntarily offered [her] consent for the College to search [her] belongings" which HGTC declined. *Id.* Plaintiff also asked "if [she] should delete the video" and Defendants informed her "that it would be up to [her] regarding whether or not [she] deleted the video." *Id.* Plaintiff deleted the year old Instagram video post during this meeting. *Id.*

36.     On or around September 18, 2024, Plaintiff was asked again to attend a meeting with Defendant Sawyer and Plaintiff explained again the Instagram video and was asked if either Plaintiff or her parents owned any guns and she stated "no."

37.     Although Defendants had previously concluded that Plaintiff's Snapchat text message using the term "blasted," on its own, "did not reach the level of a threat," on September 20, 2024, Defendants completely changed course on their interpretation of Plaintiff's use of the term "blasted" based on her year old Instagram video and stated that "the presence of the Instagram post of [Plaintiff] firing the handgun generated questions about [Plaintiff's] original explanation of the term 'blasted'" and allegedly "presented concerns about the safety of the campus." *Id* at pp. 1-2.

38.     On September 20, 2024, Defendants suspended Plaintiff from HGTC in response to and in retaliation of Plaintiff using of the term "blasted" in a Snapchat group text.

39.     Defendants claimed that the grounds for Plaintiff's suspension included Plaintiff's Instagram video in conjunction with the Snapchat group text message where she used the term "blasted," which allegedly made some students feel "unsafe." *Id.* at p. 2.

40.     Defendants further claimed that Plaintiff's Snapchat message using the term "blasted" in conjunction with her year old Instagram post "causes concern about [her] ability to remain in the

current Cosmetology cohort" and that the "use of the term 'blasted' – causes a significant amount

of apprehension related to the presence and use of guns." *Id.*

41. Defendants further claimed that:

> For the [sic] reason, it has been determined that you are in violation of the following guidelines set forth in the Student Code for The South Carolina Technical College System:
>
> E.  Infringement of Rights of Others Infringement of rights of others is defined to include, but is not limited to the following:
>
>> 5.  Engaging in any activity that disrupts the educational process of the college, interferes with the rights of others, or adversely interferes with other normal functions and services.

*Id.* at p. 2.

42. On September 20, 2024, Defendants imposed the following sanction against Plaintiff:

> SUSPENSION FROM THE COLLEGE
> You are suspended effective immediately.  Under no circumstance should you return to any Horry-Georgetown Technical College campus prior to the Fall Semester of 2025.  During the suspension period, you may not return to the campus unless prior permission by the Chief Student Services Officer, or designee, has been granted by contacting Student Affairs at (843) 349-7550; otherwise, you will be arrested for trespassing.  The suspension includes enrollment, but also revokes your privileges to participate in or utilize any on campus event, service, or activity until Fall Semester of 2025.  For the duration of this suspension, there is a NO TRESPASS order in effect.
>
> Once you have satisfied the terms of this suspension, you may submit a written request to reenroll at the Horry-Georgetown Technical College to the Office of Student Affairs.  Following a review of you file, a decision regarding your ability to re-enroll will be made at that time.
>
> DISCIPLINARY PROBATION
> At the time you are deemed eligible to reenroll at Horry- Georgetown Technical College, you will be on disciplinary probation for the remainer of your enrollment at the College.  Should there be any further violations of the Student Code during this time, more severe sanctions will result.

*Id.* at p. 2.

43.     Plaintiff's yearlong suspension with no guarantee of being permitted to reapply and reenroll at HGTC effectively amounts to an expulsion from HGTC.

44.     The portion of the Student Code for the South Carolina Technical College System which Plaintiff is alleged to have violated and cited to Plaintiff as the basis for her suspension states as follows:

> E.  Infringement of Rights of Others
>
> Infringement of rights of others is defined to include, but is not limited to the following:
>
> > 5.  Engaging in any activity that disrupts the educational process of the college, interferes with the rights of others, or adversely interferes with other normal functions and services.

Student Code for the South Carolina Technical College System, at p. 7.

45.     Upon information and belief, on or around September 17, 2024, Defendants Fore, Batten, Sawyer, Jane Doe, and John Doe made the decision to place Plaintiff under interim suspension from HGTC in retaliation of and in response to Plaintiff's Snapchat group text containing the word "blasted" and her year old Instagram post of her firing a handgun with the words "Got u hooked" which were both constitutionally protected speech.

46.     Upon information and belief, on or around September 20, 2024, Defendants Fore, Batten, Sawyer, Jane Doe, and John Doe made the decision to suspend Plaintiff for at least year from HGTC in retaliation of and in response to Plaintiff's Snapchat group text containing the word "blasted" and her year old Instagram post of her firing a handgun with the words "Got u hooked" which were both constitutionally protected speech.

47.    Upon information and belief, the decision for Plaintiff's interim suspension and subsequent yearlong suspension from HGTC was made by Defendants Fore, Batten, Sawyer, Jane Doe, and John Doe.

48.    Defendants Fore, Batten, Sawyer, Jane Doe, and John Doe acted with actual malice in that they acted with ill will towards Plaintiff and/or recklessly and wantonly with conscious indifference towards Plaintiff's rights in making their decision to issue the interim suspension and subsequent yearlong suspension of Plaintiff from HGTC.

49.    Upon information and belief, at the time they made the decision to suspend Plaintiff from HGTC, Defendants Fore, Batten, Sawyer, Jane Doe, and John Doe knew or should have known that the right to be free from disciplinary action for exercising one's First Amendment right to free speech was clearly established and they acted with actual malice in suspending Plaintiff from HGTC.

50.    Plaintiff's suspension from HGTC occurred without providing Plaintiff any warning or sufficient notice of the basis for her suspension before the suspension was made.

51.    The stated reason for Plaintiff's suspension from HGTC was unconstitutionally vague and overbroad.

52.    Plaintiff was suspended for allegedly violating sections of the South Carolina Technical College System's unconstitutionally vague and overbroad Student Code of Conduct which could not have provided Plaintiff with sufficient notice for the basis of her suspension due to being unconstitutionally vague and overbroad.

53.    All of the statements or expressions contained in Plaintiff's Snapchat text message and Instagram post cited by Defendants as the basis for Plaintiff's suspension were constitutionally protected speech and Plaintiff did not intend, did not reasonably believe, should not have

reasonably believed, nor have any reasonable basis to believe that either her Snapchat text using the term "blasted" or her year old Instagram post would cause other HGTC students, professors, or employees to feel unsafe or threatened or interfere with their rights in any way.

54.    None of the statements or expressions contained in Plaintiff's Snapchat text or Instagram post cited by Defendants as the basis for Plaintiff's suspension contained obscenities, harassment, true threats of violence, incitement of violence or lawless action, or untruthful or defamatory statements.

55.    None of the statements or expressions contained in Plaintiff's Snapchat message or Instagram post cited by Defendants as the basis for Plaintiff's suspension disrupted the educational process of the college, interfered with the rights of others, or adversely interfered with other normal functions and services at HGTC nor did Plaintiff intend, reasonably believe, or have any reasonable basis to believe that her Snapchat message or Instagram post would do the same.

56.    None of the statements or expressions contained in Plaintiff's Snapchat message or Instagram post cited by Defendants as the basis for Plaintiff's suspension contained any other form of speech not protected by the First Amendment.

57.    The rights and protections accorded to HGTC students, including Plaintiff, by the laws of the community include the right to be free from infringement of constitutionally protected speech as well as denial of due process pursuant to the First and Fourteenth Amendments of the United States Constitution as well as pursuant to the South Carolina Constitution.

58.    By suspending Plaintiff in response to her constitutionally protected speech and without due process, Defendants failed to provide Plaintiff with all rights and protections accorded her by the laws of the community.

59.    HGTC's policies and procedures for student disciplinary procedures were created, in part, pursuant to S.C. Code § 59-53-51 and are contained in the Student Code for the South Carolina Technical College System at 3.2.106.1 and are set forth in the 2023-2024 HGTC Student Handbook.

60.    The Student Code contained in the 2023-2024 Student Handbook which was in effect on September 20, 2024, at the time of Plaintiff's suspension and applied to Plaintiff as a student at HGTC states as follows:

> At a minimum, any student charged with misconduct under this code is guaranteed the following: 1) the right to receive adequate notice of the charge(s); 2) the right to see and/or hear information and evidence relating to the charge(s), and 3) the right to present information and evidence relating to the charge(s). Additional due process requirements will be identified in other sections of this Code.

Student Code for the South Carolina Technical College System, at p. 5.

61.    Defendants suspended Plaintiff on September 20, 2024 without providing her due process including, but not limited to, the right to receive adequate notice of the charge, the right to see and/or hear information and evidence relating to the charge, and the right to present information and evidence relating to the charge.

62.    All disciplinary actions taken by Defendants against Plaintiff relating to her Snapchat message and Instagram post have caused and continue to cause Plaintiff to suffer severe emotional distress, humiliation, embarrassment, and damage to her personal and professional reputation as well as economic damages in that it has deprived her of obtaining her education and South Carolina cosmetology license, delayed the start of her career and ability to earn income for one or more years in her chosen profession, and has also resulted in the loss of her college financial aid.

63.    Defendants' suspension of Plaintiff from HGTC in violation of her First and Fourteenth Amendment rights has caused economic and noneconomic damages to Plaintiff for which she is

entitled to permanent injunctive relief as well as nominal, compensatory, and punitive damages and attorney's fees and costs.

64.    Each of the Defendants acted under the color of state law at all times.

### FOR A FIRST CAUSE OF ACTION
**(First Amendment Retaliation and Infringement in Violation of 42 U.S.C. §1983)**
**(As to All Defendants)**

65.    Plaintiff incorporates the preceding paragraphs by reference as if fully rewritten herein.

66.    All of the statements or expressions contained in Plaintiff's Snapchat text message and Instagram post cited by Defendants as the basis for Plaintiff's suspension were speech acts protected from infringement and retaliation by the First Amendment of the United States Constitution.

67.    None of the statements or expressions contained in Plaintiff's Snapchat message containing the word "blasted" nor Plaintiff's Instagram post cited by Defendants as the basis for her suspension contained "true threats" or "serious expression[s]" conveying that she meant to "commit an act of unlawful violence." *Virginia v. Black,* 538 U.S. 343, 359, 123 S.Ct. 1536, 155 L.Ed.2d 535.

68.    None of the statements or expressions contained in Plaintiff's Snapchat message or Instagram post cited by Defendants as the basis for Plaintiff's suspension disrupted the educational process of the college, interfered with the rights of others, or adversely interfered with other normal factions and services of HGTC.

69.    None of the statements or expressions contained in Plaintiff's Snapchat message or Instagram post cited by Defendants as the basis for Plaintiff's suspension contained any other form of speech not protected by the First Amendment.

70.    All of the disciplinary actions taken by Defendants against Plaintiff, including, but not limited to, her interim suspension, her yearlong suspension, no trespass order, and removal of financial aid were taken in response to and in retaliation of Plaintiff exercising her First Amendment freedoms secured by the Free Speech Clause of the First Amendment to United States Constitution and adversely affected Plaintiff's First Amendment rights.

71.    There is a causal relationship between Plaintiff's protected speech and expressions and all of the disciplinary actions taken by Defendants against Plaintiff, including, but not limited to, her interim suspension, her yearlong suspension, no trespass order, and removal of financial aid, all of which were taken in response to and in retaliation of Plaintiff's exercise of her First Amendment freedoms secured by the Free Speech Clause of the First Amendment to United States Constitution: "*Congress shall make no law . . . abridging the freedom of speech*."

72.    All of the actions taken by Defendants and referred to herein, including the suspension of Plaintiff from the HGTC Cosmetology Program were done by Defendants while acting under color of state law and had the effect of depriving Plaintiff of rights secured by the Constitution and laws of the United States, specifically the Free Speech Clause of the First Amendment to the United States Constitution.

73.    Defendants' actions against Plaintiff would chill a person of ordinary firmness from continuing to engage in the protected activity.

74.    Plaintiff's protected speech and expressions in her Snapchat text message and Instagram post were a substantial or motivating factor in Defendants' decision to suspend Plaintiff from HGTC.

75.    The portions of the Student Code for the South Carolina Technical College System ("Student Code") cited to Plaintiff by Defendants as the basis for her suspension are unconstitutionally overbroad and prohibit constitutionally protected speech.

76.    The portions of the Student Code for the South Carolina Technical College System ("Student Code") cited to Plaintiff by Defendants as the basis for her suspension are unconstitutionally vague and do not give a person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that person can act accordingly.

77.    Plaintiff's continued exposure to the Student Code for the South Carolina Technical College System ("Student Code") cited to Plaintiff by Defendants as the basis for her suspension, on their face and as applied, caused and continue to cause irreparable harm and damages to Plaintiff from the violation of her First Amendment rights and the punitive academic consequences exacted upon her for exercising those rights, which include her suspension from HGTC. Additionally, Plaintiff's professional and personal reputation both amongst her peers, as well as in the small, tightly knit community of cosmetology professionals in the Horry and Georgetown area (Plaintiff's home) has been substantially tarnished and irreparably harmed.

78.    Defendants, acting in their official capacities as well as in their individual capacities, all while acting under color of state law, deprived Plaintiff of her right to exercise First Amendment protected speech, which is guaranteed by the Constitution and laws of the United States and South Carolina, in violation of 42 U.S.C. § 1983.

79.    As a direct and proximate result of Defendants retaliation and punishment against Plaintiff for exercising her First Amendment rights, Plaintiff has been deprived of her education and is unable to continue in the HGTC cosmetology program and has suffered injuries including mental

and emotional anguish and distress, extreme humiliation and embarrassment, and damage to her professional and personal reputation as well as other economic and non-economic damages.

80.    As a direct and proximate result of Defendants punishment against Plaintiff for exercising her First Amendment rights, Plaintiff has suffered and continues to suffer severe emotional distress, humiliation, embarrassment, and damage to her personal and professional reputation as well as economic damages in that it has deprived her of her education and delayed the start of her career and ability to earn income in her chosen profession and/or otherwise and has also resulted in the loss of her college financial aid.

81.    Because the law is clearly established in this area, and because Defendants had (and have) fair warning that suspending a student from a public college in response to her exercising her First Amendment freedoms is unconstitutional, Defendants are liable in their official capacity as well as personally liable in their individual capacities for violating Plaintiff's First Amendment rights.

82.    Plaintiff is entitled to an award of permanent injunctive relief, nominal, compensatory, and punitive damages as well as an award for attorney's fees, costs, and other actual damages in an amount to be proven at trial.

## FOR A SECOND CAUSE OF ACTION
**(Procedural Due Process Violation in violation of 42 U.S.C. §1983)**
**(As to All Defendants)**

83.    Plaintiff incorporates the preceding paragraphs by reference as if fully rewritten herein.

84.    Article I, Section 3, Paragraph 1 of the South Carolina Constitution and the Due Process Clause of the Fourteenth Amendment of the United States Constitution guarantee that no person shall be deprived of life, liberty, or property without due process of law.

85.     Students at public colleges enjoy protected property interests in their education such that due process must be provided to them prior to the denial of those interests.  *See Goss v. Lopez*, 419 U.S. 565, 574 (1975); *Bd. of Curators v. Horowitz*, 435 U.S. 78, 86 (1978).

86.     Due process requires at a minimum that before being deprived of the protected property interest in her education, Plaintiff was entitled to fair notice as to what conduct is proscribed, fair notice as to the substance of the charges alleging violations of the prohibition on such proscribed conduct, a fair opportunity to defend against specific charges of such violations, and a process and punishments that are not arbitrary and capricious.  Defendants violated these fundamental due process rights of Plaintiff.

87.     At no time did Defendants provide Plaintiff with these essential rights prior to their decision to suspend her and Plaintiff's punishment of suspension was arbitrary and capricious.

88.     Based on Defendants' deprival of Plaintiff's due process rights and the resulting injuries to Plaintiff, neither HGTC's nor the State of South Carolina's procedures will provide Plaintiff with an adequate pre- or post-deprivation remedy to cure the erroneous deprivation of her property rights and liberty interests.

89.     Because the law is clearly established in this area, and because Defendants had (and have) fair warning that denying Plaintiff the right to a public education as well as a right to adequate notice and an adequate opportunity to be heard prior to suspending her from HGTC, was unconstitutional, Defendants are liable for violating Plaintiff's rights protected by the Fourteenth Amendment.

90.     The denial of constitutional rights is irreparable injury *per se,* and Plaintiff is entitled to permanent injunctive relief.  In addition, Plaintiff is entitled to damages to be determined by a jury.

91.     Defendants in their official capacities as well as in their individual capacities, all acting under color of state law, deprived Plaintiff of her Fourteenth Amendment right to due process, which is guaranteed by the Constitution and laws of the United States and South Carolina, in violation of 42 U.S.C. § 1983.

92.     As a direct and proximate result of Defendants' expulsion of Plaintiff without due process, Plaintiff has suffered, and continues to suffer, injuries including mental and emotional anguish and distress, extreme humiliation and embarrassment, and damage to her professional and personal reputation as well as other economic and non-economic damages.

93.     As a direct and proximate result of Defendants punishment against Plaintiff without providing her due process, Plaintiff has suffered and continues to suffer severe emotional distress, humiliation, embarrassment, and damage to her personal and professional reputation as well as economic damages in that it has delayed the start of her career and ability to earn income for one or more years in her chosen profession and/or otherwise and has also resulted in the loss of her college financial aid.

94.     Plaintiff is entitled to an award of permanent injunctive relief, nominal, compensatory, and punitive damages as well as an award for attorney's fees, costs, and other actual damages in an amount to be proven at trial.

### FOR A THIRD CAUSE OF ACTION
**(Individual Liability - First Amendment Retaliation and Infringement in Violation of 42 U.S.C. §1983)**
**(As to Defendants Fore, Batten, Sawyer, Jane Doe, and John Doe Acting in Their Individual Capacity)**

95.     Plaintiff incorporates the preceding paragraphs by reference as if fully rewritten herein.

96.     All of the statements or expressions contained in Plaintiff's Snapchat text message and Instagram post cited by Defendants Fore, Batten, Sawyer, Jane Doe, and John Doe as the basis for

Plaintiff's suspension were speech acts protected from infringement and retaliation by the First Amendment of the United States Constitution.

97.    None of the statements or expressions contained in Plaintiff's Snapchat message containing the word "blasted" nor Instagram post cited by Defendants Fore, Batten, Sawyer, Jane Doe, and John Doe as the basis for Plaintiff's suspension contained "true threats" or "serious expression[s]" conveying that she meant to "commit an act of unlawful violence." *Virginia v. Black,* 538 U.S. 343, 359, 123 S.Ct. 1536, 155 L.Ed.2d 535.

98.    None of the statements or expressions contained in Plaintiff's Snapchat message or Instagram post cited by Defendants Fore, Batten, Sawyer, Jane Doe, and John Doe as the basis for Plaintiff's suspension disrupted the educational process of the college, interfered with the rights of others, or adversely interfered with other normal factions and services of HGTC.

99.    None of the statements or expressions contained in Plaintiff's Snapchat message or Instagram post cited by Defendants Fore, Batten, Sawyer, Jane Doe, and John Doe as the basis for Plaintiff's suspension contained any other form of speech not protected by the First Amendment.

100.    All of the disciplinary actions taken by Defendants Fore, Batten, Sawyer, Jane Doe, and John Doe against Plaintiff, including, but not limited to, her interim suspension, her yearlong suspension, no trespass order, and removal of financial aid were taken in response to and in retaliation of Plaintiff exercising her First Amendment freedoms secured by the Free Speech Clause of the First Amendment to United States Constitution and adversely affected Plaintiff's First Amendment rights.

101.    There is a causal relationship between Plaintiff's protected speech and expressions and all of the disciplinary actions taken by Defendants Fore, Batten, Sawyer, Jane Doe, and John Doe against Plaintiff, including, but not limited to, her interim suspension, her yearlong suspension, no

trespass order, and removal of financial aid, all of which were taken in response to and in retaliation of Plaintiff's exercise of her First Amendment freedoms secured by the Free Speech Clause of the First Amendment to United States Constitution: "*Congress shall make no law . . . abridging the freedom of speech*."

102.    All of the actions taken by Defendants Fore, Batten, Sawyer, Jane Doe, and John Doe and referred to herein, including the suspension of Plaintiff from the HGTC Cosmetology Program were done by Defendants while acting under color of state law and had the effect of depriving Plaintiff of rights secured by the Constitution and laws of the United States, specifically the Free Speech Clause of the First Amendment to the United States Constitution.

103.    Defendants Fore, Batten, Sawyer, Jane Doe, and John Doe's actions against Plaintiff would chill a person of ordinary firmness from continuing to engage in the protected activity.

104.    Plaintiff's protected activity was a substantial or motivating factor in Defendants' decision to expel Plaintiff from HGTC

105.    The portions of the Student Code for the South Carolina Technical College System ("Student Code") cited to Plaintiff by these Defendants as the basis for her suspension are unconstitutionally overbroad and prohibit constitutionally protected speech.

106.    The portions of the Student Code for the South Carolina Technical College System ("Student Code") cited to Plaintiff by these Defendants as the basis for her suspension are unconstitutionally vague and do not give a person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that person can act accordingly.

107.    Plaintiff's continued exposure to the Student Code for the South Carolina Technical College System ("Student Code") cited to Plaintiff by these Defendants as the basis for her suspension, on their face and as applied, caused and continue to cause irreparable harm and

damages to Plaintiff from the violation of her First Amendment rights and the punitive academic consequences exacted upon her for exercising those rights, which include her suspension from HGTC. Additionally, Plaintiff's professional and personal reputation both amongst her peers, as well as in the small, tightly knit community of cosmetology professionals in the Horry and Georgetown area (Plaintiff's home) has been substantially tarnished and irreparably harmed.

108. Defendants, acting in their individual capacities, all while acting under color of state law, deprived Plaintiff of her right to exercise First Amendment protected speech, which is guaranteed by the Constitution and laws of the United States and South Carolina, in violation of 42 U.S.C. § 1983.

109. As a direct and proximate result of these Defendants acting in their individual capacity's punishment against Plaintiff for exercising her First Amendment rights, Plaintiff has suffered injuries including mental and emotional anguish and distress, extreme humiliation and embarrassment, and damage to her professional and personal reputation as well as other economic and non-economic damages.

110. As a direct and proximate result of these Defendants acting in their individual capacity's punishment against Plaintiff for exercising her First Amendment rights, Plaintiff has suffered and continues to suffer severe emotional distress, humiliation, embarrassment, and damage to her personal and professional reputation as well as economic damages in that it has delayed the start of her career and ability to earn income for one or more years in her chosen profession and/or otherwise and has also resulted in the loss of her college financial aid.

111. Because the law is clearly established in this area, and because these Defendants acting in their individual capacity had (and have) fair warning that suspending a student from a public college in response to her exercising her First Amendment freedoms is unconstitutional,

Defendants are liable in their official capacity as well as personally liable in their individual capacities for violating Plaintiff's First Amendment rights.

112.   The actions of these Defendants acting in their individual capacity were intentional, malicious, willful, and in reckless disregard for her rights to be from such unlawful action. Therefore, Plaintiff is entitled to recover punitive damages against the individual Defendants, in an amount to be determined by the jury, sufficient to deter these Defendants and others from engaging in such unlawful actions in the future.

113.   Plaintiff is entitled from these Defendants acting in their individual capacity to an award of permanent injunctive relief, nominal, compensatory, and punitive damages as well as an award for attorney's fees, costs, and other actual damages in an amount to be proven at trial.

## FOR A FOURTH CAUSE OF ACTION
**(Individual Liability - Procedural Due Process Violation in violation of 42 U.S.C. §1983)**
**(As to Defendants Fore, Batten, Sawyer, Jane Doe, and John Doe acting in their Individual Capacity)**

114.   Plaintiff incorporates the preceding paragraphs by reference as if fully rewritten herein.

115.   Article I, Section 3, Paragraph 1 of the South Carolina Constitution and the Due Process Clause of the Fourteenth Amendment of the United States Constitution guarantee that no person shall be deprived of life, liberty, or property without due process of law.

116.   Students at public colleges enjoy protected property interests in their education such that due process must be provided to them prior to the denial of those interests. *See Goss v. Lopez*, 419 U.S. 565, 574 (1975); *Bd. of Curators v. Horowitz*, 435 U.S. 78, 86 (1978).

117.   Due process requires at a minimum that before being deprived of the protected property interest in her education, Plaintiff was entitled to fair notice as to what conduct in proscribed, fair notice as to the substance of charges alleging violations of the prohibition on such proscribed conduct, a fair opportunity to defend against specific charges of such violations, and a process and

punishments that are not arbitrary and capricious.  These Defendants acting in their individual capacity violated these fundamental due process rights of Plaintiff.

118.    These Defendants acting in their individual capacity failed to provide Plaintiff with these essential rights prior to their decision to suspend her.

119.    Based on these Defendants' deprival of Plaintiff's due process rights and the resulting injuries to Plaintiff, neither HGTC's nor the State of South Carolina's procedures will provide Plaintiff with an adequate pre- or post-deprivation remedy to cure the erroneous deprivation of her property rights and liberty interests.

120.    Because the law is clearly established in this area, and because these Defendants acting in their individual capacity had (and have) fair warning that denying Plaintiff the right to a public education as well as adequate notice and an adequate opportunity to be heard prior to suspending her from HGTC, was unconstitutional, these Defendants acting in their individual capacity are liable for violating Plaintiff's rights protected by the Fourteenth Amendment.

121.    The denial of constitutional rights is irreparable injury *per se,* and Plaintiff is entitled to permanent injunctive relief.  In addition, Plaintiff is entitled to damages to be determined by a jury.

122.    Defendants Fore, Batten, Sawyer, Jane Doe, and John Doe acting in their individual capacity and acting under color of state law, deprived Plaintiff of her Fourteenth Amendment right to due process, which is guaranteed by the Constitution and laws of the United States and South Carolina, in violation of 42 U.S.C. § 1983.

123.    As a direct and proximate result of Defendants Fore, Batten, Sawyer, Jane Doe, and John Doe's suspension of Plaintiff without due process, Plaintiff has suffered, and continues to suffer, injuries including mental and emotional anguish and distress, extreme humiliation and

embarrassment, and damage to her professional and personal reputation as well as other economic and non-economic damages.

124.    Defendants Fore, Batten, Sawyer, Jane Doe, and John Doe all participated in the decision to suspend Plaintiff without providing her the necessary due process which is guaranteed by the Constitution and laws of the United States and South Carolina, in violation of 42 U.S.C. § 1983.

125.    Defendants Fore, Batten, Sawyer, Jane Doe, and John Doe's actions while acting in their individual capacities under the color of state law against Plaintiff were intentional, malicious, and in reckless disregard for her rights to be free from such unlawful action.  Therefore, Plaintiff is entitled to recover punitive damages against these individual Defendants, in an amount to be determined by the jury, sufficient to deter these Defendants and others from engaging in such unlawful actions in the future.

126.    Plaintiff is entitled to an award of permanent injunctive relief and nominal, compensatory, and punitive damages as well as an award for attorney's fees, costs, and other actual damages in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor and grant the following relief:

(a)    enter judgment on the merits of her claims in Plaintiff's favor;

(b)    issue a permanent injunction ordering that: i) Defendants lift its No Trespass order against Plaintiff and permit her to complete her current courses on-campus for the Fall 2024 semester and re-enroll for on-campus courses in HGTC's Cosmetology Program for the Spring 2025 semester; ii) Defendants expunge their school records as to Plaintiff's suspension; iii) Defendants reestablish Plaintiff's financial aid; iv) Defendants be enjoined from disclosing or

discussing her suspension with anyone; v) requiring Defendants to provide a neutral or positive reference for Plaintiff;

(c)    enter judgment against Defendants for her actual and compensatory damages, nominal damages, and punitive or exemplary damages as are proven at trial; and

(d)    enter judgment in favor of Plaintiff for her attorney fees, costs, and expenses pursuant to 42 U.S.C. § 1988, and for any such further legal and equitable relief as the Court deems appropriate.

Dated: October 23, 2024                    Respectfully submitted,

s/ David D. Ashley_____
Ben Le Clercq
(S.C. Bar #65754, U.S. District Court # 7453)
David D. Ashley
(S.C. Bar #76206, U.S. District Court #10220)
Le Clercq Law Firm
708 South Shelmore Blvd. #202
Mount Pleasant, SC 29464
Phone (843) 722-3523
Fax (843) 352-2977
Ben@LeClercqLaw.com
David@LeClercqLaw.com
*Counsel for Plaintiff*

VERIFICATION

I, Leigha Lemoine, do hereby declare under penalty of perjury, that the allegations set out in this

complaint are true to the best of my knowledge, information, and belief.

Date: 10-16/24 _____    _____
Leigha Lemoine