UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| **LEIGHA LEMOINE** § § § | |
| *Plaintiff,* § § § | C.A. No.: 4:24-cv-06032-JD |
| v. § § § | |
| **HORRY GEORGETOWN TECHNICAL COLLEGE; MARILYN MURPHY FORE, Ed.D**, individually and in her official capacity as President of Horry Georgetown Technical College; **MELISSA BATTEN, Ph.D.,** individually and in her official capacity as Vice President of Student Affairs of Horry Georgetown Technical College; and **KRISTEN SAWYER, Ed.D.,** individually and in her official capacity as Director of Student Development; Jane Doe, individually and in her official capacity; and John Doe, individually and in his official capacity § § § § § § § § § § § § § § § § § | **PLAINTIFF'S SUR-REPLY** |
| *Defendants.* § | |

Plaintiff submits this limited Sur-Reply for the purpose of addressing arguments and material submitted by Defendants in their Reply [ECF No. 27] that could have (and should have) been raised and provided in their original motion and which Plaintiff did not have an opportunity to address in her Response in Opposition [ECF No. 26].

### 1. Informal Report Regarding Alleged April 11, 2025 Photo and Social Media Post Not Resulting in Disciplinary Action

In their Reply, Defendants assert for the first time that an "informal report" made regarding a social media post from April 11, 2025, did not result in a disciplinary action against Plaintiff:

> Plaintiff further questions Defendants motivations based on the mention of an informal report which was made regarding her posting another student on social media with a derogatory caption. While Plaintiff is correct, no formal complaint was filed, as she is fully aware she does in fact have a First Amendment right. However, the lack of discipline based on the complaint should not be a basis for Plaintiff denying such allegation because it did in fact happen. Defendants are quite sure, had Plaintiff been disciplined for such an action, she would have merely alleged another violation of her freedom of speech so Defendants are unclear what point she is trying to make by bringing the informal complaint to the court's attention.

[ECF No. 27 – Def. Reply at p. 5].

The April 16, 2025 Student Conduct Investigative Report cites only three complaints against Plaintiff ("Complaint 1"; "Complaint 2;" and "Additional Complaint") [ECF No. 25-2 at pp. 9-10]. According to the Investigative Report, "Complaint 1" and "Complaint 2" did not yield any findings that Plaintiff had violated the "Student Code." *Id.* The Investigative Report concluded that only the "Additional Complaint" (which Defendants now characterize as an "informal report") found that Plaintiff had violated an "institutional policy." *Id.* The "informal report," or "Additional Complaint" as cited in the Investigative Report, contained the allegation relating to a photo being posted to social media on April 11, 2025. *Id.* at p. 7 and p. 10. Defendants' April 17, 2025 Conduct Decision letter specifically cites this allegation as a violation of an "institutional policy" and as a basis for disciplinary action against Plaintiff. [ECF No. 26-18 at p. 5]. Defendants now acknowledge in their Reply that, not only was no formal complaint filed regarding this allegation, but that no disciplinary action was taken against Plaintiff because of it. [ECF No. 27 – Def. Reply at p. 5]. **Plaintiff takes this opportunity to accept Defendants' acknowledgment that no disciplinary action was or will be taken against her relating to the alleged April 11, 2025 photo and social media post**. Because this was the only complaint cited against Plaintiff in the Investigative Report (formal or informal) that found that she violated an the

"student code" or "institutional policy," Plaintiff would respectfully request that Defendants withdraw the present motion or, in the alternative, that the Court deny it.

2.  **May 27, 2025 Memo – [ECF No. 27-5]**

In support of their Motion [ECF No. 25], Defendants inexplicably attached two, unfounded formal complaints made against Plaintiff as well as their own investigative report that had determined that neither of those complaints resulted in a finding against Plaintiff that she had violated the "Student Code." [ECF No. 25-1, Complaint 1 and Complaint 2; ECF No. 25-2, Student Conduct Investigative Report at pp. 9-10]. While the investigative report broadly asserted some vague, unspecified allegations relating to "[c]onduct which interferes with the instructional environment," none of those allegations were asserted or cited as part of any formal or informal complaint against Plaintiff nor do they contain any dates or descriptions of specific incidents. [ECF No. 25-2 at pp. 10-11].

Moreover, Plaintiff correctly noted in her Response in Opposition that Defendants failed to provide any support for their argument regarding a "significant change in facts" relating to their assertion that "Plaintiff has disrupted the classroom environment to the extent that staff has had to substantially deviate from classroom procedure which could negatively affect all students and put each of them at a disadvantage." [ECF No. 26, at p. 27]. Now, for the first time, despite having this material available to them when they filed their motion, Defendants provide a May 27, 2025 Memo prepared by Assistant Vice President & Dean, Theresa Strong[1] (addressed to their own counsel) that purports to support their argument. [ECF No. 27-5]. The Memo explains a plan concocted by Defendants to rid themselves of Plaintiff whereby HGTC faculty were instructed not

---

[1] For reference, Theresa Strong is the same HGTC administrator that helped concoct Defendants' plan to withhold evidence and complainant identities from Plaintiff for her Hearing Committee Appeal. [ECF No. 26 at pp. 7-9; ECF No. 26-7].

to assist in facilitating partner work for Plaintiff ultimately leaving her without a partner to work with on group assignments. *Id.* at p. 1.  The plan goes on to explain that "[f]ailure to complete the required pair/group assignments will result in LL [Plaintiff] not passing the courses" and "[a]ny failed courses must be retaken in a future semester, where the same instructional expectations will apply" (in other words this plan will ensure that she can never complete the program). *Id.* at p. 2.

Since the drafting of this Memo, perhaps Defendants' "better angles" prevailed because Defendants have apparently made the decision to completely walk back this plan and as well as its stated rationale.  On June 19, 2025, HGTC President Fore and Vice President & Dean Theresa Strong were deposed.  During their depositions, they both, unequivocally, testified that while they still do not intend to facilitate partner work for Plaintiff, they now believe that she can successfully complete all assignments on her own without a partner and successfully complete the Cosmetology program in its entirety.  [Plaintiff has requested that these deposition transcripts be expedited, and Plaintiff will submit the relevant portions to the Court as soon as they are available which is expected to be June 25, 2025].  Strong testified that the class did not always have an even number of students (due to absences, etc.) and therefore it was not uncommon for students to have to work individually or in groups of three.  It should also be noted that since partner choices in the classroom are voluntary, it is perfectly natural and expected that many students have simply chosen to work with classmates they are already friends with which is in no way a reflection on Plaintiff and should not count against her – especially where Defendants have specifically developed a plan to not assist in facilitating partner work for her.

Next, President Fore testified that since the submission of the Memo, she discussed this issue with HGTC faculty and administrators, and they concluded that Plaintiff could successfully complete all pair-work assignments with mannequins.  President Fore had inquired as to how

applicants performed their tasks while sitting for the State Cosmetology Board exam and was informed that the applicants used mannequins. She rightfully concluded that HGTC students (not just Plaintiff) could obviously complete their college assignments that way as well. President Fore even authorized funding for additional mannequins, if necessary.

Because the May 27, 2025 Memo is the only material provided by Defendants which purports to support their argument relating to their assertion that Plaintiff has caused "substantial deviation from classroom procedure," and because Defendants have since completely walked back their stated plan and rationale during their depositions, Plaintiff again respectfully requests that Defendants withdraw the present motion or, in the alternative, that the Court deny it.

### a.  Additional Evidence of Retaliation by Defendants

The May 27, 2025 Memo also serves as additional evidence that Defendants' motion to lift the injunction to allow them to once again remove Plaintiff from HGTC was brought in retaliation for Plaintiff filing this lawsuit. During her deposition, when asked what "threats of lawsuits" in her memo referred to [ECF No. 27-5 at p. 1], Theresa Strong indicated that it referred to the present lawsuit. [Plaintiff has requested that these deposition transcripts be expedited, and Plaintiff will submit the relevant portions to the Court as soon as they are available which is expected to be June 25, 2025]. Additionally, Strong specifically concludes her Memo to Defendants' counsel with the following statement regarding HGTC's intent to remove Plaintiff from the college: **"we believe presenting this motion to the court is crucial for the future direction of our case."** [ECF No. 27-5 at p. 2] (emphasis added). When this Memo was drafted to HGTC counsel, Defendants clearly, but mistakenly, believed that removing Plaintiff from the HGTC Cosmetology program again would somehow be beneficial to their case. Regardless of the wisdom of such a gambit, it leaves no doubt that Defendants' second attempt to remove Plaintiff from HGTC is clearly in

retaliation for and in response to her filing this lawsuit for the purpose of remedying Defendants' first attempt to remove her.

### 3. Student Complaints and Group Chat Text Message

In their Reply, Defendants make two contradictory statements in back-to-back sentences. First, they state that they did not go "around looking for students to file a complaint against Plaintiff" but in the very next sentence confirm that while investigating the complaints asserted against two students by Plaintiff, Defendants did "encourage each [of the students investigated] . . . to file a formal complaint." [ECF No. 27 at p. 4]. Oddly, Defendants also address one of the student complaints against Plaintiff that she was responsible for one of the instructors no longer being at the college and submitted a text message for the first time with their Reply. *Id.* at p. 5; ECF No. 27-4. It is unclear why such a charge would even be investigated since it would obviously not be a student code violation to voice a complaint about an instructor to her classmates. Additionally, the college would obviously already be aware that Plaintiff did not have anything to do with this instructor no longer being at the college making an investigation into the charge even more bizarre. Finally, as has become a habit with Defendants, they misrepresent the content of the text message. *Id.* The text message submitted by Defendants is a class group text chain where ***all*** the students in the conversation are voicing complaints about a particular instructor and Plaintiff simply chimes in along with everyone else in the conversation. *Id.* Again, this is obviously not a student code violation so it is unclear why such a charge would even be investigated, especially to the point of Defendants seeking out text message evidence from other students.

### 4. No-Contact Agreement for Other Students

Defendants note in their Reply that disciplinary action was also taken against three students in Plaintiff's class that she had complained about apparently resulting in them having to enter a

similar no-contact agreement relating to Plaintiff. Defendants have not produced these no-contact agreements to Plaintiff. Regardless, it continues to demonstrate uneven and unfair treatment of Plaintiff by comparison. Despite these students engaging in sufficiently disruptive actions towards Plaintiff requiring a no-contact agreement, it is only Plaintiff that Defendants intend to remove from the college.

5.  **Defendants' Reply Alludes to Unstated "Concerns"**

Finally, in keeping with their tradition of violating Plaintiff's due process rights and the college's own student policy regarding due process, Defendants vaguely allude in their Reply to some unstated "concerns" about Plaintiff from the Summer Semester that they acknowledge they have not provided her notice of: "Further, while Plaintiff has not been made aware of any issues in the Summer Semester, she should not be so quick to assume that concerns have not arisen." [ECF No. 27 at p. 6]. Then, Defendants conclude their Reply with a promise to provide the Court at some future date further unstated and unexplained "additional evidence" in support for their motion. *Id.* at p. 7. Defendants were required to provide all supporting evidence at the time of filing their motion and Plaintiff objects to Defendants' attempts at motion practice by surprise.

## CONCLUSION

Because Defendants have walked back the sole basis provided for their removal of Plaintiff from the HGTC Cosmetology program [the May 27, 2025 Memo], Plaintiff respectfully requests that they withdraw the present motion or, in the alternative, that the Court deny it.

Moreover, discovery has shown, and Defendants continue to prove with their ongoing actions and conduct against Plaintiff, including obviously retaliatory actions, that they intend to continue to repeat their conduct that prompted the Court's injunction in the first instance and that dissolution of the injunction would not be equitable.

Dated: June 23, 2025         Respectfully submitted,

/s/ David D. Ashley
David D. Ashley
(S.C. Bar #76206, U.S. District Court #10220)
Le Clercq Law Firm
708 South Shelmore Blvd. #202
Mount Pleasant, SC 29464
Phone (843) 722-3523
Fax (843) 352-2977
David@LeClercqLaw.com
*Counsel for Plaintiff*