IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| LEIGHA LEMOINE, | ) | CASE NO.: 4:24-cv-06032-JD |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| HORRY GEORGETOWN | ) | |
| TECHNICAL COLLEGE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter involves a constitutional challenge to a suspension and no-trespassing order issued by a state technical college. Currently before the Court is the motion of Defendants Horry Georgetown Technical College ("HGTC"), Marilyn Murphy Fore ("Fore"), Melissa Batten ("Batten"), and Kristin Sawyer ("Sawyer") (collectively, "Defendants") to dissolve the preliminary injunction entered by this Court on December 17, 2024. (DE 15; DE 25.) Plaintiff Leigha Lemoine ("Lemoine") filed a response in opposition (DE 26), to which Defendants submitted a reply (DE 27). Lemoine subsequently moved for leave to file a sur-reply (DE 28), which is docketed at Docket Entry 29. The Court grants Lemoine's motion for leave to file the sur-reply. For the reasons below, Defendants' motion is denied without prejudice.

## I.     BACKGROUND

### A.     Procedural Background

On October 23, 2024, Lemoine filed her complaint in this Court. (Compl., DE 1.) In it, Lemoine sues HGTC directly as well as:

> Marilyn Murphy Fore, Ed.D., in her individual and official capacity as president of HGTC;

- Melissa Batten, Ph.D., in her individual and official capacity as vice president of student affairs at HGTC;

> Kristin Sawyer, Ed.D., in her individual and official capacity as director of student development at HGTC; and

- Two fictitious defendants in both their individual and official capacities who represent as-yet unknown "administrators, instructors, and/or other personnel at HGTC" who decided to suspend Lemoine.

(*See* DE 5 at 1; *id.* at 6.) Lemoine asserts, under 42 U.S.C. § 1983, that HGTC and the named defendants have retaliated against and infringed on her protected speech, as well as violated her due process rights, all in violation of the First and Fourteenth Amendments. (*See generally* DE 1.)

Lemoine filed an emergency motion for injunctive relief. (DE 5.) In it, Lemoine contended that she was entitled to a temporary restraining order or preliminary injunction that enjoined Defendants "from enforcing HGTC's one[-]year suspension of [Lemoine] from HGTC and [the] accompanying no[-]trespass order" and that "require[es] HGTC to readmit [Lemoine] to HGTC's Cosmetology Program . . . ." (*Id.* at 1.) Lemoine contended that she would suffer irreparable harm because of the suspension and no-trespass order, because she could not complete the cosmetology program without attending in-person classes. (DE 5 at 7 & n 2; Compl. ¶ 77, DE 1 at 18.)

On December 17, 2024, the Court granted Lemoine's motion for preliminary injunction, finding that she demonstrated a likelihood of success on her First

Amendment retaliation claim and that Defendants' disciplinary action appeared to rest on protected speech ("the Injunction Order"). (DE 15 at 1, 13.)

The Injunction Order directed Defendants to lift the no-trespass order and readmit Lemoine to the cosmetology program. (*Id.* at 19.) Though Defendants initially resisted immediate compliance with the Court's order, they ultimately permitted Lemoine to re-enroll for the Spring 2025 semester. (DE 26 at 9–10.)

On May 28, 2025, Defendants filed a motion to dissolve the preliminary injunction under Rule 60(b)(5), Fed. R. Civ. P., asserting that Lemoine's continued enrollment had caused classroom disruption and necessitated deviations from standard instructional procedures. (DE 25 at 2–4.) Lemoine opposed the motion, arguing that Defendants failed to demonstrate any significant, unforeseen changes in fact or law warranting dissolution and that the conduct cited was either unsubstantiated, exaggerated, or later withdrawn. (DE 26 at 1–2; DE 29 at 3.)

Defendants submitted additional exhibits in support of their motion through their reply brief. (DE 27.) Lemoine filed a sur-reply addressing the newly raised arguments and evidence. (DE 29.)

## B.    Facts Relevant to the Rule 60(b) Motion

After the Injunction Order granted Lemoine's motion for preliminary injunction and ordered her re-admission to HGTC's Cosmetology Program, several events occurred, which form the basis of Defendants' motion to dissolve the injunction under Rule 60(b)(5).

### 1.    Compliance with the Injunction Order

On January 13, 2025, Lemoine resumed participation in the Cosmetology Program for the Spring 2025 semester. Although Defendants initially raised logistical concerns related to Lemoine's course placement, she was ultimately re-enrolled before the start of classes. (DE 26 at 9–10.)

### 2.    Reports by Lemoine of Student-Conduct Issues

During the Spring 2025 semester, Lemoine submitted several reports to HGTC administrators alleging instances of interpersonal conflict with fellow students. These reports included descriptions of verbal exchanges, refusals by other students to work with her on classroom assignments, and comments made about her personal background. (DE 26 at 10–12; DE 26-11.) On March 13, 2025, Lemoine submitted a formal written complaint about these matters. (DE 26-11.)

HGTC's Title IX Coordinator, Tamatha Sells ("Sells"), met with Lemoine to discuss the allegations. During that meeting, Sells advised Lemoine that the Student Code's filing policy limited formal review to incidents within ten instructional days of the complaint. Accordingly, the inquiry focused on alleged conduct in March 2025. (DE 26-12.) Lemoine reported that these interactions had affected her classroom participation and personal well-being. (*Id.*)

By email dated April 3, 2025, Sells informed Lemoine that the investigation had been completed. Sells stated that the Office of Student Affairs conducted interviews with Lemoine, instructors, and other students, and reviewed video footage where available. The communication concluded that the investigation produced no

evidence substantiating the allegations in Lemoine's complaint and that there was no basis to pursue the matter further. (DE 26-15.)

### 3. Student-Conduct Investigation Relating to Lemoine

In April 2025, HGTC investigated allegations involving Lemoine. According to the Student Conduct Investigative Report dated April 16, 2025 ("the April 16 Report" or "the Report"), the inquiry reviewed three complaints: two formal complaints (labeled "Complaint 1" and "Complaint 2") and one additional matter described as an "Additional Complaint," which related to a social media post made on April 11, 2025. (DE 25-2 at 9–10.)

The April 16 Report concluded that neither Complaint 1 nor Complaint 2 established a violation of the Student Code of Conduct. The Report acknowledged the presence of interpersonal conflict and discomfort among students but noted that the complaints were either unsubstantiated or reflected incidents outside the formal reporting window. (*Id.* at 9–10.)

The April 16 Report's only cited policy violation arose from the Additional Complaint, which alleged that Lemoine posted a photo of another student to social media with a caption that was "derogatory." (*Id.* at 10.) The Report concluded that the post "violated institutional policy (section F.3. of Student Code)." (*Id.* at 10.) However, the April 16 Report did not recommend a disciplinary sanction.[1]

---

[1]    It is also noted that the investigation revealed other conduct believed to be inconsistent with student conduct expectations. The report cited violations under Sections E(4), E(5), and F(3) of the Student Code for the South Carolina Technical College System, which address bullying or harassing conduct, disruption of the educational process, and violations of institutional policies. (DE 25-2 at 10.) The report stated that Lemoine had a chance to respond to these other allegations during the investigation. Even so, the report did

5

Subsequently, Defendants clarified in their Reply that no formal complaint was filed regarding the April 11, 2025, post and that Lemoine was not disciplined in connection with it. (DE 27 at 5; DE 29 at 2.)

Nonetheless, on April 17, 2025, Defendants sent Lemoine a letter suspending her and including a "no trespass" order. (DE 26 at 20–21; *see* DE 26-18 (the letter).) The letter contained, too, a notice that the "SANCTIONS ARE BEING IMPOSED, BUT ARE HELD IN ABEYANCE, PENDING REVIEW BY THE COURT." (DE 26 at 21 (boldface removed).)

### 4. Internal Administrative Memo Regarding Classroom Procedure

Defendants submitted a memorandum dated May 27, 2025, written by Assistant Vice President and Dean Theresa Strong ("Strong"), outlining a proposed instructional approach related to Lemoine's classroom participation. The memorandum described a plan in which instructors would not facilitate partner assignments for Lemoine, with the potential consequence that incomplete group work could affect her course completion. (DE 27-5 at 1–2.)

Subsequent deposition testimony on June 19, 2025, by Strong and HGTC President Marilyn Murphy Fore addressed this memorandum. Both testified that Lemoine could complete required assignments using mannequins, consistent with the standards employed for the State Cosmetology Board examination. They also stated

---

not reference any formal complaint or disciplinary recommendation related to these findings. (DE 25-2 at 11-12.)

that such accommodations were feasible and had been used for other students in similar situations. (DE 29 at 4–5.)

## II.    LEGAL STANDARD

Rule 60(b) of the Federal Rules of Civil Procedure allows a party to obtain relief from a final judgment based on any one (or more) of five circumstances:

> (1)    mistake, inadvertence, surprise, or excusable neglect;
>
> (2)    newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3)    fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;
>
> (4)    the judgment is void;
>
> (5)    the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or
>
> (6)    any other reason justifying relief from the operation of the judgment.

"The powers reflected in Rule 60(b) are subject to limitations imposed by the rule itself and by precedent." *United States v. Winestock*, 340 F.3d 200, 204 (4th Cir. 2003). The Fourth Circuit has explained that Rule 60(b) creates "a remedy that 'is extraordinary and is only to be invoked upon a showing of exceptional circumstances.'" *McLawhorn v. John W. Daniel & Co.*, 924 F.2d 535, 538 (4th Cir. 1991) (quoting another source). The movant must be "timely" in seeking relief, and in addition "assumes 'the burden of showing a meritorious defense against the claim on which judgment was entered as a threshold condition to any relief whatsoever under the Rule.'" *Id.* (quoting another source).

7

"In order to grant a Rule 60(b)(5) motion to modify a prior order, the court must find 'a significant change either in factual conditions or in law.'" *Microstrategy, Inc. v. Business Objects, S.A.*, 369 F.Supp.2d 725, 732 (E.D. Va. 2005) (citing *Rufo v. Inmates of Suffolk County Jail,* 502 U.S. 367, 384 (1992)).

The governing federal standard in reviewing a motion to dissolve focuses on six "non-exhaustive" factors:

(1)   the circumstances leading to entry of the injunction and the nature of the conduct sought to be prevented;

(2)   the length of time since entry of the injunction;

(3)   whether the party subject to its terms has complied or attempted to comply in good faith with the injunction;

(4)   the likelihood that the conduct or conditions sought to be prevented will recur absent the injunction;

(5)   whether the moving party can demonstrate a significant, unforeseen change in the facts or law and whether such changed circumstances have made compliance substantially more onerous or have made the decree unworkable; and

(6)   whether the objective of the decree has been achieved and whether continued enforcement would be detrimental to the public interest.

*Crutchfield v. United States Army Corps of Eng'rs*, 175 F.Supp.2d 835, 844 (E.D. Va. 2001).

"When confronted with any motion invoking [Rule 60(b)(5)], a district court's task is to determine whether it remains equitable for the judgment at issue to apply prospectively and, if not, to relieve the parties of some or all of the burdens of that judgment on such terms as are just." *Microstrategy*, 369 F. Supp. 2d at 734 (citing *Alexander v. Britt,* 89 F.3d 194, 197 (4th Cir.1996)); *see Stone v. Trump*, 400 F. Supp.

317, 332 (D. Md. 2019) ("Under Rule 60(b)(5) of the Federal Rules of Civil Procedure, a court may dissolve an injunction if it 'is based on an earlier judgment that has been reversed or vacated' or if applying the injunction prospectively 'is no longer equitable.'").

## III.     DISCUSSION

The Court has reviewed the parties' submissions and the relevant legal standard. Having done so, the Court finds that Defendants have not met their burden under Rule 60(b)(5) to establish that continued application of the preliminary injunction is no longer equitable.

### A. *Crutchfield* Factor One: the Circumstances Leading to the Injunction Order and the Nature of the Conduct Sought To Be Prevented

The circumstances giving rise to the issuance of the Injunction Order centered on allegations of First Amendment retaliation in connection with certain disciplinary action taken against Lemoine. (*See* DE 15 at 1–4.) In response, the Injunction Order narrowly required Defendants to rescind the no-trespass order and allow Lemoine to resume attendance in the in-person cosmetology program. (*Id.* at 18–19.)

Notably, the Injunction Order does not address—nor does it purport to restrict—conduct beyond the specific relief granted. *See* Rule 65(d)(1), Fed. R. Civ. P. ("[e]very order granting an injunction must[ ] . . . state its terms specifically[,] and [ ] describe in reasonable detail . . . the act or acts restrained or required"). So, the Court did not curtail HGTC's authority to enforce general classroom standards, manage student interactions, or administer its educational operations pursuant to institutional policies. Likewise, the Order did not limit HGTC's discretion in

9

addressing pedagogical concerns, including curriculum design, instructional methodologies, or student collaboration, so long as such decisions remain constitutionally sound.

Nevertheless, these considerations do not alter the Court's prior determination that "[o]n the record as of [December 17, 2024], th[e] threat was real" as to Lemoine's First Amendment rights. *Crutchfield*, 175 F. Supp. 2d at 845. Those facts "entitled [Lemoine] to injunctive relief." *Id.* So, in short, this factor weighs against dissolving the Injunction Order.

### B. *Crutchfield* Factor Two: the Length of Time Since the Injunction Order Was Entered

Here, just over five months passed between the entry of the Injunction Order and the filing of Defendants' motion. (*Compare* DE 15 (filed December 17, 2024), *with* DE 25 (filed May 28, 2025).)  Standing alone, this relatively brief interval presents competing inferences. On one hand, it may suggest that Defendants have not ceased the retaliatory conduct that gave rise to the Injunction Order, indicating the continued necessity of equitable relief. (*See* DE 26 at 26 ("[T]hey are already repeating the same retaliatory conduct that prompted the injunction.").) On the other hand, it may reflect that Lemoine has not adhered to institutional policies, independent of any protected expression. (*See* 25 at 2 ("[Lemoine]'s actions since being back on campus have disrupted the in-person learning environment and resulted in a second formal investigation of [Lemoine]'s actions.").)

The Court, however, need not resolve that tension. The sole question before it is whether "the circumstances underlying issuance of the injunction have changed so

dramatically" that maintaining the Injunction Order would now be inequitable. *Crutchfield*, 175 F. Supp. 2d at 845. They have not. The record shows only that HGTC has responded to Lemoine's alleged misconduct through existing institutional policies and Title IX procedures.[2] Such developments are not a material or unanticipated change in circumstances. To the contrary, the existence of these enforcement mechanisms—well-established and regularly applied—suggests that the type of conduct at issue falls squarely within anticipated institutional governance. Thus, this factor, too, weighs against dissolving the Injunction Order.

### C. *Crutchfield* Factor Three: Whether Defendants Complied or Attempted to Comply with the Injunction Order

There is no dispute that Defendants have complied with the Injunction Order.[3] Furthermore, Defendants' holding in abeyance a putative suspension of Lemoine suggests good faith. (*See* DE 26-18 at 7.) In context, this factor offers only limited support for dissolving the Injunction Order.

---

[2]    For context, *even before* the Injunction Order was entered, Lemoine's stint at HGTC was nearly over. Now she has only four to five months remaining. (*See* DE 26 at 25 (noting "[Lemoine] has one semester remaining before completing the HGTC cosmetology program").)

[3]    As noted *supra*, Lemoine contends that "two business days before classes were scheduled to begin" Defendants notified Lemoine that she may not be re-enrolled absent another student adding or dropping a course. (DE 26 at 9–10.) While this is concerning, Lemoine ultimately was enrolled without incident.

### D. *Crutchfield* Factors Four and Five: Likelihood That Proscribed Conduct Will Recur and Difficulty of Compliance

The Court treats these two factors as one in this case. To begin with, the Court notes that it does not presume that HGTC will act unlawfully.[4] Lemoine, however, maintains that Defendants have, in fact, continued to engage in retaliatory conduct. (*See, e.g.*, DE 26 at 14 (noting that two student complaints against Lemoine "are identical in style" and "appear to have been typed by the same individual".).) Defendants dispute this and point to Lemoine's "lack of accountability" following her return to HGTC. (*See* DE 27 at 1–2.)

As noted *supra*, since the issuance of the Injunction Order, additional complaints have been filed against Lemoine, and further investigations have been initiated—some of which have since been resolved. The parties, however, dispute the significance of these developments within the framework of Rule 60(b)(5). *Crutchfield*, 175 F. Supp. 2d at 847 (emphasis added); *see Georgia Vocational Rehab. Agency Bus. Enter. Program v. United States*, No. 4:18-CV-148, 2023 WL 1110298, at *4 (E.D. Va. Jan. 30, 2023) (explaining that the changes "must alter the balance of the harms that warranted the injunction").

---

[4]        This presumption is not irrefutable. Lemoine points to ambiguous evidence that could be construed as reflecting an intent to remove her after the issuance of the Injunction Order—specifically, the May 27, 2025, memorandum. (DE 27-5.) In that document, Strong proposed modifications to Lemoine's classroom assignments and disciplinary measures for students who declined to work with her. However, subsequent sworn testimony from HGTC administrators disavowed those proposals and affirmed that Lemoine could fulfill all instructional requirements through the alternative methods already in place. (*See* DE 29 at 4–5 (citing deposition testimony).)

In that regard, the Court must proceed with caution. While difficulties concerning Lemoine's conduct and her interactions with others on campus may be genuine, such issues must be carefully assessed to determine whether they reflect a material change in circumstances sufficient to justify dissolution of the Injunction Order.

It is on this point that Defendants contend that the Injunction Order has impaired HGTC's institutional functioning. (*See, e.g.*, DE 25 at 5 (describing "change[s] in the classroom environment and modifications that are having to be made" ).) Yet the record says otherwise. It reflects that issues with Lemoine have either been resolved through existing administrative channels or deemed not to warrant further disciplinary or procedural action. (DE 26-15 (resolution of Lemoine's March 2025 complaint); DE 25-2 at 9–10 (Title IX report concluding classmates' "initial allegations . . . could not be substantiated," but finding "other behaviors which violated the Student Code" as to Lemoine); *but see* DE 26-18 at 7 (holding suspension in abeyance pending this Court's order).) If the Injunction Order imposes any burden on HGTC—apart, of course, from its essential function in vindicating First Amendment rights—the record shows that such impact is *de minimis*. So, in short, these two factors do not support dissolving the Injunction Order.

### E.   *Crutchfield* Factor Six: Whether the Objective of the Decree Has Been Achieved and Whether Continued Enforcement Is in the Public Interest

Finally, the goal of the Injunction Order was to prevent unconstitutional retaliation. Indeed, as the Court explained, while "maintain[ing] order and safety,"

"Defendants must ensure that all students' First Amendment rights are upheld." (DE 15 at 17.) Both are in the public interest, but the latter required judicial intervention.

To be sure, that intervention succeeded—Lemoine was re-enrolled. But equally, there is no sign that the Injunction Order has prevented Defendants from fulfilling their core educational mission or addressing legitimate concerns through lawful means—all of which are in the public interest. To the extent that Defendants seek to preserve authority over classroom management, the Court reiterates the principle, long recognized by the Supreme Court of the United States, that "[j]udicial interposition in the operation of the public school system of the Nation raises problems requiring care and restraint. . . . By and large, public education in our Nation is committed to the control of state and local authorities." *Goss v. Lopez*, 419 U.S. 565, 578 (1975). The Injunction Order does not disturb this allocation of authority; it merely preserves Lemoine's constitutional rights pending final adjudication. And so, this factor does not support dissolving the Injunction Order.

Again—nothing in the Injunction Order precludes Defendants from exercising reasonable authority to ensure order, safety, pedagogical effectiveness, or instructional integrity, consistent with constitutional guarantees.

\*     \*     \*

Accordingly, considering all the factors individually and together, the Court finds that Defendants have not shown that continued enforcement of the Injunction Order is inequitable under Rule 60(b)(5). Defendants' motion is, therefore, denied without prejudice.

14

## IV.    CONCLUSION

For these reasons, the Court finds that Defendants have not established a significant, unforeseen change in circumstances or other grounds sufficient to warrant relief under Rule 60(b)(5) of the Federal Rules of Civil Procedure. The Court's preliminary injunction order remains equitable in its prospective application and does not interfere with Defendants' authority to administer their educational programs or maintain order in the classroom setting.

Accordingly, Defendants' Motion to Dissolve the Preliminary Injunction (DE 25) is hereby **DENIED WITHOUT PREJUDICE**.

**IT IS SO ORDERED**.

Joseph Dawson, III
United States District Judge

Florence, South Carolina
August 1, 2025

15